

SO ORDERED,

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: January 27, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**                                                        **CHAPTER 13**
**STEPHEN L. MASON, SR.**                    **CASE NO. 1004195EE**


**RUSHMORE LOAN MANAGEMENT**
**SERVICES, LLC**

**V.**                                                        **ADVERSARY NO. 1500075EE**

**STEPHEN L. MASON, SR.**


Hon. Richard R. Grindstaff                                        Attorney for Debtor
grindstaf@yahoo.com
Post Office Box 720517
Byram, MS 39272


Hon. Kent D. McPhail            Attorney for Rushmore Loan Management Services, LLC
kent@dumasmcphail.com
Post Office Box 870
Mobile, AL 36601


Hon. James L. Henley, Jr.                                        Chapter 13 Trustee
Post Office Box 31980
Jackson, MS  39286


Edward Ellington, Judge

## <u>MEMORANDUM OPINION</u>

**THIS MATTER** came before the Court on the *Motion for Summary Judgment* (Adv. Dkt. #11) filed by Rushmore Loan Management Services, LLC as servicing agent for Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8 (Rushmore); the *Response to Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #14) filed by Stephen L. Mason, Sr. (Debtor); the *Adversary Plaintiff's Amended Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #17) filed by Rushmore; the *Defendant's Motion for Summary Judgment, Motion for Sanctions, and Motion for Hearing on Issue of Damages* (Adv. Dkt. #12) filed by the Debtor; and the *Adversary Plaintiff's Response to Defendant's Motion for Summary Judgment* (Adv. Dkt. #18) filed by Rushmore.

After considering same and the *Joint Stipulation of Undisputed Facts and Debtor and Creditor's Positions* (Adv. Dkt. #26) (Joint Stipulation) filed by Stephen L. Mason, Sr. and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8 , (Rushmore)[1] the Court finds summary judgment should be granted in favor of the Debtor and denied in favor of Rushmore.

_____

[1]The Joint Stipulation was filed on August 29, 2016, by Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8 and the Debtor.

On August 10, 2016, Rushmore Loan Services, LLC as servicing agent for Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, Series 2013-8 filed a *Transfer of Claim Other than for Security* (Dkt. #93). The *Transfer of Claim Other than for Security* (Dkt. #93) states that Rushmore Loan Management Services, LLC as servicing agent for Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust, *Series 2013-8* had transferred its claim to Rushmore Loan Management Services LLC as servicing agent for Wilmington Savings Funds Society FSB, d/b/a Christina Trust, as trustee for Normandy Mortgage Loan Trust, *Series 2016-1.* For purposes of this Opinion, the creditor will be referred to as Rushmore.

2

## FINDINGS OF FACT[2]

"On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't. Of Transp.,* 264 F.3d 493, 498 (5th Cir. 2001).  Upon consideration of both motions for summary judgment and the Joint Stipulation, the Court finds that there are no genuine disputes as to any material facts.  The Joint Stipulation states that the following are undisputed facts:

1) "**Debtor**" filed a chapter 13 bankruptcy on December 10, 2010, case number 10-04195-EE. In Debtor's plan the debtor listed an arrearage to Citi Mortgage in the amount of $12,000.00 to be paid at $200.00 per month over the 60 months of the proposed plan.

2) Debtor's plan was drafted as a maintenance plan as it relates to the underlying mortgage which is the basis of this complaint.

3) The original creditor, CitiMortgage, Inc., on or about December 28, 2010, filed a proof of claim in the debtor's Chapter 13, (Claim number 1). This claim included arrearage in the amount of $439.21.

4) **[Rushmore]** filed a transfer of claim on October 7, 2013, transferring claim number "1", from CitiMortgage, Inc to **"[Rushmore]"**.

5) On February 21, 2014, Chapter 13 Trustee sent a letter to debtor indicating they were in the process of closing his case with the regular mortgage payments to be paid by the Debtor beginning March 2014.

6) On March 5, 2014, the Trustee in this case filed and served a **Notice of Final Cure Payment** in this case.

7) "**[Rushmore]**" filed a response to the Notice of final cure asserting that there were additional funds owed.

---

[2]These proposed findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

8) When the notice of final cure was filed, Debtor still had 20 months remaining in his Chapter 13 plan.

9) **"[Rushmore]"** filed an Amended claim on or about May 23, 2014 amending the initial claim filed by CitiMortgage, Inc". *[sic]* This Amended claim included arrearage in the amount of $12,608.52.

**10) "Debtor"** filed an objection to the Amended Claim as well as an Amended Objection to the Amended Claim.

**11) "[Rushmore]",** filed an Amended response to the Objection to Claim.

**12)** The court entered an order relating to the amended claim and trustee's motion to deem current on 10/30/2014. The order stated that the Debtor was current with his mortgage payments, and, stated "**IT IS FURTHER ORDERED** THAT THE MORTGAGE ARREARAGE LISTED IN THE PROOF OF CLAIM (Claim #1-1) and in the amended proof of claim (Claim #1-2), namely $439.21, have been satisfied and all defaults have been cured." The court also found that Debtor would be unduly prejudiced by allowing [Rushmore] to amend its proof of claim.

**13)** The arrearage that was not allowed in the Amended claim based upon undue prejudice given how late in the plan the amended claim was submitted, has never been paid through any proceeds from the Debtor directly, or indirectly through the trustee.

### [Rushmore's] position

It is Creditor's position that the Court's ruling in the order referenced in paragraph "12" above, to not allow the claim to be amended, was not an adjudication that the *[sic]* all the arrearage inside and outside the plan had "Been Cured". Specifically the court ruled that to allow the claim to be amended that late in the plan would unduly prejudice the defendant, not, that the arrearage in question had in fact been paid (*emphasis added*). It is Creditor's position that the ruling that the arrearage had been paid and that the Debtor was current, only relates to the continuing maintenance payments under the debtor's plan and the arrearage of $439.21 included in the plan, as is specifically itemized in the order (*emphasis added*). Lastly, it is Creditor's position that the amounts not included or allowed under creditor's motion to allow, while not recoverable, remain a lien on the property pursuant to *In re D.M. Thompson,* Case No. 95-11159-MAM-13, a Judge Margaret Mahoney opinion which is factually and legally on point to the underlying case. Creditor would note that nowhere in any pleadings related to this matter does the Debtor assert that they "Paid" the arrearage that was not included in the claim, but simply that Debtor simply seeks to benefit from the Creditor's mistake, which is factually analogous to that in *In re D.M. Thompson.*

4

**Debtor's position**

Debtor's position is that this entire issue is res judicata, and that allowing a lien to remain on the subject property after a creditor's mistake only further causes undue prejudice towards the debtor. Further, allowing the lien to remain on the property essentially mandates payment by the Debtor, frustrating the purpose of the Bankruptcy discharge. Allowing the creditor to simply retain a lien for incorrectly asserting what pre-petition amounts were owed, even though the mortgage was declared current by judicial order, would make the judicial order irrelevant, both the original and subsequent Amended Proof of Claim's irrelevant, and a holding of the same could allow any Debtor to never truly attain the fresh start provided by a bankruptcy discharge.

**STATEMENT OF ISSUE**

The issue in this case is whether the court's ruling that "All defaults have been cured", relates only to defaults under the Debtor's chapter 13 maintenance plan, or, alternatively, whether this statement extended to all defaults including the arrearage that was not allowed to be included in the amended claim from outside the plan.

If the court finds that the prior order included all arrearage, inside and outside the plan, the lien will be extinguished. If the court finds that the prior order related only to arrearage and maintenance payments under the terms of the Debtor's plan, the debt will not be recoverable but a lien will remain on the property.

*Joint Stipulation of Undisputed Facts and Debtor and Creditor's Positions,* Adv. Proceeding No. 1500075EE, Adv. Dkt. #26, unnumbered pages 1-3, Aug. 29, 2016.

This is the second Opinion this Court has written in this case. On October 30, 2014, the Court entered its *Memorandum Opinion* (Dkt. #69) (Proof of Claim Opinion)[3] and *Final Judgment* (Dkt. #70). The issue before the Court in the Proof of Claim Opinion was: after the Debtor had completed all plan payments, whether Rushmore would be allowed to amend its proof of claim to drastically increase the amount of pre-petition mortgage arrearage from $439.21 to $12,608.52.

The basic facts of the Proof of Claim Opinion were: Rushmore had timely filed proofs of claim. The Debtor did not object to either of Rushmore's timely filed proof of claims, therefore,

---

[3]*In re Mason,* 520 B.R. 508 (Bankr. S.D. Miss. 2014).

5

Rushmore's claim was deemed allowed under 11 U.S.C. § 502(a)[4] in the principal amount of $62,706.22 and with a pre-petition arrearage claim in the amount of $439.21.

Thirty-eight months later, the Debtor completed all plan payments. At that time, Rushmore filed a third amended proof of claim (Third Proof of Claim) in which it claimed that the Debtor's pre-petition mortgage arrearage was actually $12,608.52. The Debtor objected to the Third Proof of Claim.

In its Proof of Claim Opinion, the Court sustained the Debtor's objection to the Third Proof of Claim and disallowed the pre-petition mortgage arrearage of $12,608.50 contained in the Third Proof of Claim. The Court further granted James L. Henley, Jr.'s, the Chapter 13 Trustee, (Trustee) *Trustee's Motion for an Order Declaring [Rushmore's] 1322(B)(5) Claim Defaults Cured Pursuant to Amended Proof of Claim Filed on January 11, 2011.* This order deemed the Debtor current in his mortgage payments to Rushmore at that point in time. Finally, the Court held that "the mortgage arrearage listed in the *Proof of Claim* (Claim #1-1) and in the amended *Proof of Claim* (Claim #1-2), namely $439.21, have been satisfied and all defaults have been cured."[5] Rushmore did not appeal the Proof of Claim Opinion, consequently, it became a final judgment.

Thereafter, the Trustee filed his *Trustee's Notice of Completion of Plan Payments* (Dkt. #75) on March 11, 2015, and his *Chapter 13 Standing Trustee's Final Report and Account* (Dkt. #76) (Final) on March 12, 2015. The Final shows that Rushmore was paid $53,731.80 in ongoing mortgage payments and $439.21 on Rushmore's arrearage claim.

---

[4]Hereafter all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[5]*Final Judgment,* Dkt. No. 70, p. 2 (Oct. 30, 2014).

On April 14, 2015, the *Discharge of Debtor After Completion of Chapter 13 Plan* (Dkt. #79) was entered. The Debtor's case was closed on April 21, 2015. (Dkt. #81).

On July 15, 2015, Rushmore filed its *Motion to Re-Open Bankruptcy for Purpose of Filing Adversary to Determine Validity, Priority and Extent of Lien* (Dkt. #83). An order was entered reopening the bankruptcy case on August 13, 2015. (Dkt. #88).

Rushmore initiated the above-styled adversary proceeding with the filing of its *Adversary Complaint to Determine Validity, Priority and Extent of Lien* (Adv. Dkt. #1) on October 29, 2015. On October 30, 2015, Rushmore filed its *Amended Adversary Complaint to Determine Validity, Priority and Extent of Lien* (Adv. Dkt. #4) (Complaint). In the Complaint, Rushmore states that the Debtor has demanded that Rushmore release its lien on his homestead. Rushmore has declined to release its lien because Rushmore alleges that it holds a valid lien against the Debtor's property for the unpaid pre-petition mortgage arrearage the Court deemed was disallowed in its Proof of Claim Opinion, namely $12,608.52. Rushmore requests that the Court find that it holds a valid lien on the Debtor's property for the unpaid pre-petition arrearage.

The Debtor filed his *Answer and Counter-Complaint* (Adv. Dkt. #7) (Answer or Counter Claim) on November 11, 2015. In its Answer, the Debtor states that the Court has previously ruled that the Debtor had brought his mortgage current by the end of his bankruptcy plan. The Debtor also states that he has subsequently paid the last payment due Rushmore under the promissory note. Consequently, the Debtor states that the Court should deny Rushmore's request to find that it holds a valid lien on the Debtor's property for the unpaid pre-petition mortgage arrearage and require Rushmore to release its lien. In his Counter Claim, the Debtor alleges Rushmore has reported to the credit bureaus that he is delinquent in his mortgage payments and that Rushmore is attempting to

7

collect a debt this Court has ordered he did not owe. The Debtor seeks attorney fees and damages for Rushmore's violation of the discharge order.

Rushmore filed a *Motion for Summary Judgment* (Adv. Dkt. #11) (Rushmore's Motion) on April 14, 2016, in which Rushmore alleges there is no dispute to any material fact and that it is entitled to a judgment against the Debtor as a matter of law. The Debtor filed his *Response to Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #14) (Debtor's Answer) on April 20, 2016, in which the Debtor denies Rushmore is entitled to a judgment as a matter of law. Rushmore filed *Adversary Plaintiff's Amended Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment* (Adv. Dkt. #17).

On April 20, 2016, the Debtor filed his *Defendant's Motion for Summary Judgment, Motion for Sanctions, and Motion for Hearing on issue of damages [sic]* (Adv. Dkt. #12) (Debtor's Motion). In the Debtor's Motion, the Debtor alleges that there is no dispute to any material fact and that he is entitled to a judgment against Rushmore as a matter of law. Included in the Debtor's Motion is a *Motion for Sanctions* against Rushmore pursuant to Federal Rule of Civil Procedure 11(b). Rushmore filed *Adversary Plaintiff's Response to Defendant's Motion for Summary Judgment* (Adv. Dkt. #18) (Rushmore's Answer) on May 11, 2016, in which Rushmore alleges that the Debtor is not entitled to a judgment as a matter of law. Included in Rushmore's Answer is a motion to dismiss the Debtor's Motion and the Debtor's *Motion for Sanctions.*

On June 10, 2016, the Court entered an *Order Bifurcating Issues* (Adv. Dkt. #19) (Bifurcating Order). In the Bifurcating Order, the Court ordered that it would bifurcate the matters and decide the threshold issue of the validity, priority and extent of any lien by Rushmore. Once there was a final adjudication as to the validity, priority and extent of any lien of Rushmore, the

8

Court would then address the question of sanctions, attorney fees and damages.

The Court heard the motion to strike on July 20, 2016, and ruled that the motion to dismiss the Debtor's Motion should be denied. The Court further found that the Debtor's *Motion for Sanctions* should be denied. On September 13, 2016, the Court signed an *Order* (Adv. Dkt. #28) denying Rushmore's motion to dismiss the Debtor's Motion and denying the Debtor's *Motion for Sanctions*. After the parties informed the Court that they would not be filing amended briefs, the Court took the matter under advisement on November 10, 2016.

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1), (2)(K).

### II. Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure,[6] as amended effective December 1, 2010,[7] provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Since the parties have stipulated to the undisputed facts, the Court may now consider

---

[6]Federal Rule of Civil Procedure 56 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

[7]The Notes of Advisory Committee to the 2010 amendments state that the standard for granting a motion for summary judgment has not changed, that is, there must be no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Further, "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases."

whether judgment may be entered as a matter of law.

### III. Application to the Case at Bar

### A.  Background:  Treatment of Mortgages in Chapter 13 Cases

Under the Bankruptcy Code, two sections define how a mortgage lender will be paid in a Chapter 13 case.  Section 1322(b)(2) is known as the *anti-modification* provision and provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."  11 U.S.C. § 1322(b)(2).  The *anti-modification* provision grants special rights to mortgage lenders, and by prohibiting modification of the mortgage lender's contractual rights,  incorporates the pre-petition mortgage contract into a Chapter 13 plan.

To balance the rights granted to mortgage lenders, § 1322(b)(5) gives debtors the right to cure any pre-petition arrearage on their mortgage and to remain current on their mortgage.  Section 1322(b)(5) provides that a Chapter 13 plan may:

> (5)  notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(5).

In other words, under § 1322(b)(5), a debtor can maintain current mortgage payments and cure any pre-petition mortgage arrearage through a Chapter 13 plan. "Essentially, § 1322(b)(5) does not allow modification of a creditor's substantive right to payments, but does modify how a

10

mortgage lender can exercise these substantive rights."[8]

Once a debtor's Chapter 13 plan is confirmed by the court,

the . . . order confirming the plan binds the debtor and mortgage lender to the allocation scheme provided for by the plan. 11 U.S.C. § 1327(a).[[9]] The Court order imposes reciprocal rights and obligations on the debtor and the mortgage lender. Both the debtor and the mortgage lender must comply with the plan.

The debtor's obligations ensure payments to the mortgage lender and protection of the lender's collateral. Accordingly, the debtor must make all payments within the time and in the amount prescribed by the plan.

. . . .

The creditor's obligations ensure that the debtor can cure arrearages and emerge from bankruptcy no longer facing foreclosure because of default.[10]

If a debtor maintains the ongoing mortgage payments over the life of the plan and has cured all pre-petition mortgage arrearage, the plan is fully performed. The effect is that the debtor is now current on his mortgage obligations.[11]

## B. Was Rushmore's Lien Extinguished?

The Court will note at the onset that neither the Debtor nor Rushmore provided the Court with much legal authority to support their respective positions. Rushmore relies mainly on two cases to support its position that its lien for the unpaid pre-petition mortgage arrearage was not extinguished: *In re Thompson,* Case No. 95-11159-MAM-13, (Bankr. S.D. Ala. May 20, 1998) and

---

[8]*Cano v. GMAC Mortgage Corp. (In re Cano),* 410 B.R. 506, 529-30 (Bankr. S.D. Tex. 2009).

[9]Section 1327(a) provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to[,] has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

[10]*In re Cano,* 410 B.R. at 531.

[11]*Id.* at 532.

*In re Stovall,* 256 B.R. 490 (Bankr. N.D. Ill. 1999).  The Court will discuss each case separately.

In *Thompson*, the debtor was behind eleven (11) mortgage payments when he filed a Chapter 13 bankruptcy.  When the mortgage company filed its proof of claim, it failed to list the pre-petition arrearage, therefore, the Chapter 13 trustee did not pay any mortgage arrearage through the plan.  The debtor received his discharge after twenty-five (25) months of payments.

Subsequently, the debtor moved to reopen his bankruptcy case to determine whether a pre-discharge mortgage arrearage existed.  In denying the motion to reopen the bankruptcy case, the court found that the debtor had pre-petition mortgage arrearage that was not paid during his bankruptcy case.  Therefore, the unpaid pre-petition mortgage arrearage survived the debtor's discharge.

Rushmore is attempting to claim that the mortgage arrearage which this Court disallowed in its Proof of Claim Opinion is in the same posture as the pre-petition mortgage arrearage in *Thompson*.  It is not.  Unlike the creditor in *Thompson*, Rushmore filed two proofs of claim for a pre-petition mortgage arrearage in the amount of $439.21, which was deemed allowed when no objection was filed to either proof of claim.  The Debtor paid the allowed pre-petition mortgage arrearage in full, again, unlike the debtor in *Thompson*.

After Rushmore filed its Third Proof of Claim, the Court disallowed the claim and deemed the Debtor current in his mortgage payments.  *Thompson* did not involve a situation where a claim for a pre-petition mortgage arrearage was disallowed by the court–to the contrary, there was no adjudication in *Thompson* as the debtor's pre-petition mortgage arrearage.  By virtue of the pre-petition mortgage arrearage in the Third Proof of Claim being disallowed by the Court, the Debtor did not owe a pre-petition mortgage arrearage at the time his case was discharged and closed.

Consequently, the court finds *Thompson* inapplicable to the case at bar.

Rushmore also relies on the *Stovall* case to support its position. While the facts of *Stovall* can be distinguished from the case at bar, the court's reasoning in *Stovall* in reaching its decision is applicable to the case at bar.

In *Stovall,* the debtor filed a motion to reopen his bankruptcy case to enforce the discharge injunction. The debtor alleged that over the life of his plan that he had paid his mortgage in full. The creditor alleged that its claim was not paid in full, and therefore, its lien survived the bankruptcy case.

The debtor's plan in *Stovall* proposed to pay the entire balance owed on his mortgage. The creditor filed a proof of claim, which was allowed, and the debtor completed his plan payments and received his discharge. After the case was reopened, it was discovered that the Chapter 13 trustee had misread the creditor's proof of claim and failed to accurately calculate the correct amount needed to pay the mortgage in full.[12]

In reaching its decision, the court quoted extensively from *Matter of Penrod,* 50 F.3d 459 (7th Cir. 1995):

> [W]here a plan of reorganization is silent as to lien preservation, extinction of the lien is appropriate where the plan of reorganization provides treatment of the secured creditor's filed claim [*Penrod,* 50 F.3d] at 462-63 (stating that unless reorganization plan or order confirming plan preserves the lien, it is extinguished by plan confirmation provided secured creditor participated in reorganization). Thus, "liens pass through bankruptcy unaffected . . . unless they are brought into the bankruptcy proceeding and dealt with there." *Id.* at 463. A lien on property only exists to secure payment of a specific debt. Liens do not survive bankruptcy where the debt is provided for in the plan and is paid in full."

_____

[12]After completing his plan payments, the debtor still owed approximately $12,000 on his mortgage debt.

13

*Stovall,* 256 B.R. at 493 (citations omitted).

The *Stovall* court found that the debt to the creditor was provided for in the plan to be paid in full, "and if that had been done the lien would have been extinguished." *Id.* But, due to the trustee's misreading of the proof of claim, the debtor did not pay the creditor claim in full because the debtor still owed the creditor over $12,000.00 at the time he completed his plan payments. Consequently, the court held that the creditor's lien was not extinguished.

In the case at bar, Rushmore filed two proofs of claim for pre-petition mortgage arrearage, and therefore, participated in the reorganization. Rushmore's claim for $439.21 in pre-petition mortgage arrearage was provided for in the Debtor's plan, and unlike the debtor in *Stovall,* the Debtor paid this amount in full. Therefore, any lien for a pre-petition mortgage arrearage was extinguished upon payment in full of the $439.21. Consequently, *Stovall* can be distinguished from the case at bar.

While the facts can be distinguished, the Court finds persuasive the case of *In re Kleibrink*.[13] In *Kleibrink*, the creditor filed a proof of claim for a pre-petition mortgage arrearage. The debtor objected to the proof of claim,[14] and the creditor filed a response. While properly noticed of the hearing, the creditor failed to appear at the hearing. An order was entered sustaining the debtor's objection to the proof of claim. The creditor later filed a motion to vacate the court's order, but the court denied this motion, therefore, at the time the debtor completed his plan payments, the claim

_____

[13]*In re Kleibrink*, 346 B.R. 734 (Bankr. N.D. Tex. 2006), *aff'd*, 2007 WL 2438359 (N.D. Tex. Aug. 28, 2007), *aff'd,* 621 F.3d 370 (5th Cir. 2010).

[14]The debtor also listed objections to the claim on its Chapter 13 plan. *In re Kleibrink*, 346 B.R. at 740.

objection order "remained final, binding, and enforceable."[15]  The debtor's case was discharged and closed.

The debtor then filed another bankruptcy case.  The debtor alleged that the creditor's claim was disallowed in his prior bankruptcy case and any interest the creditor held in his property was discharged in his prior bankruptcy case.  The creditor, of course, alleged that the claims objection order did not disallow its secured claim and that its lien was not extinguished in the bankruptcy.

The Honorable Barbara J. Houser discusses in depth what is required in order for a debtor to extinguish a lien in a Chapter 13 bankruptcy case.  Judge Houser found that:

> [A] creditor with both a note and a lien has two distinct remedies: (i) to collect on the note as a personal, contractual liability of the maker, and (ii) to recover against, or foreclose upon, specific collateral *in rem*. The filing of a petition in bankruptcy does not, without more, alter this basic scheme. Once bankruptcy intervenes, however, the parties' relative rights and obligations are subject to the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.
>
> The Bankruptcy Code does not require a secured creditor—i.e., a creditor with a lien—to file a proof of claim. *See* 11 U.S.C. § 501 (a creditor "may" file a proof of claim); Fed. R. Bankr. P. 3002(a) ("an unsecured ... creditor must file a proof of claim ... for the claim ... to be allowed"). The law is well established that ordinarily, liens pass through bankruptcy unaffected, *In re Orr*, 180 F.3d 656, 660 (5th Cir.1999), and a secured creditor can ignore the bankruptcy case and look solely to his collateral in satisfaction of the debt (although he will be stayed from doing so during the pendency of the case). *In re Kinion*, 207 F.3d 751 (5th Cir. 2000).
>
> However, should the creditor elect to seek payment of the debt as a personal obligation of the debtor, the creditor must file a proof of claim in order to be entitled to a payment of the obligation as a personal liability of the debtor (instead of from the collateral) and, once bankruptcy intervenes, payment from the bankruptcy estate. *In re Hogan*, Case. No. 04–82031, 2006 WL 2243657 (Bankr. N.D. Tex. July 18, 2006). The filing of a proof of claim, therefore, is the means through which a creditor elects to be paid as a personal liability of the debtor—i.e., as relevant here, from the estate's funds under a Chapter 13 plan.  *In re Macias*, 195 B.R. 659 (Bankr. W.D. Tex. 1996) (secured creditor, while entitled to ignore the bankruptcy proceedings and look solely to its collateral, must file a claim in order to receive a distribution from

---

[15]*Id*. at 742.

the estate). The filing of a proof of claim is therefore akin to an action on the underlying note.

The filing of a proof of claim is not, however, the means through which a creditor can foreclose on collateral—i.e., to enforce the debtor's obligation *in rem*. A creditor seeking to enforce its rights against collateral must seek and obtain relief from the automatic stay in order to do so. 11 U.S.C. § 362(a)(4) (a bankruptcy petition "operates as a stay ... of ... any act to create, perfect, or enforce any lien against property of the estate").

It therefore follows logically that the disallowance of a proof of claim, without more, does not have the effect of extinguishing the lien. The disallowance of a claim means only that the creditor is not entitled to a distribution from the estate. The question then becomes—what more is required to extinguish a lien?

B. Extinguishing Liens in Bankruptcy

A bankruptcy discharge does not, in and of itself, do the trick. A bankruptcy discharge extinguishes only one mode of enforcement of a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action *in rem*. *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Nor does confirmation of a chapter 13 plan which treats a lienor as an unsecured creditor, in and of itself, do the trick. *In re Simmons*, 765 F.2d 547 (5th Cir.1985).

As relevant here, the Court believes that there are two ways in which a lien may be extinguished: (i) by operation of Section 506(d) of the Bankruptcy Code, or (ii) by providing for, and paying in full, the underlying debt under a confirmed plan. Taking the second method first, a lien will be extinguished where the debt is provided for, and paid in full under, the confirmed plan. *In re Allen*, 122 Fed.Appx. 96 (5th Cir. 2004) (unpublished disposition); *In re Stovall*, 256 B.R. 490 (Bankr. N.D. Ill. 1999). In such a situation, it is not so much that the lien is extinguished, but that the underlying debt is paid, such that the lien secures nothing and is therefore discharged. However, the rule is that where the debt is not paid in full under the plan, the lien remains intact and passes through the bankruptcy unaffected. *In re Allen*, 122 Fed.Appx. at 97 (affirming an order granting relief from stay to a lien creditor who had not been paid in full under debtor's chapter 13 plan in a prior chapter 13 case in which debtor had received a discharge).

The first method of extinguishing a lien—i.e., by operation of Section 506 of the Bankruptcy Code—requires more discussion. Section 506 provides:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such

16

property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

\* \* \*

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506.

Moreover, the Federal Rules of Bankruptcy Procedure expressly contain two separate mechanisms to implement Section 506. Rule 3012 provides that the court "may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim...." Rule 7001 provides that "[a]n adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings: ... (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property...."

The Court concludes, for the reasons set forth below, that the mechanism described in Rule 3012 can be used to extinguish a lien when the basis for its avoidance is a valuation of the collateral under Section 506(a), but that the mechanism described in Rule 7001 is required where the basis to extinguish the lien is a challenge to its validity, priority, or extent. The Court also concludes, for the reasons set forth below, that the claim objection process may "substitute" for an adversary proceeding where the claim objection is clearly joined with a demand for relief of the kind specified in Rule 7001—i.e., where the claim objection gives clear notice that the debtor is challenging the validity, priority, or extent of the lien and seeks to abrogate a creditor's right to look to its collateral, and the debtor complies with the procedural safeguards set forth in Part VII of the Federal Rules of Bankruptcy Procedure.

. . . .

The Fifth Circuit has arguably intimated that a claim objection is the appropriate

17

method to extinguish a lien. *See In re Simmons*, 765 F.2d 547 (5th Cir.1985) (holding that a lien was not extinguished where no objection to the creditor's claim had been filed). The Fifth Circuit did so, however, in the context of deciding whether confirmation of a plan which treated an allegedly secured creditor as unsecured, without express language avoiding the lien, was sufficient to extinguish the lien. In *Simmons*, the Fifth Circuit held that confirmation of such a chapter 13 plan did not operate to extinguish the creditor's lien, where the debtor had not filed an objection to the creditor's claim. The Fifth Circuit stated that "the purpose of filing an objection is to join issue in a contested matter, thereby placing the parties on notice that litigation is required to resolve an actual dispute between the parties." *Id.* at 552.

> . . . .

Similarly, in *In re Howard*, 972 F.2d 639 (5th Cir. 1992), the Fifth Circuit considered whether a confirmed chapter 13 plan, which purported to reduce a creditor's secured claim, is res judicata as to that creditor. The plan in the *Howard* case provided that the secured creditor would be paid $500 in full compromise of its claim against the debtors and its lien would be "lifted." In other words, the plan expressly provided for avoidance of the lien. The creditor had filed a proof of claim, but did not object to confirmation of the plan. The Fifth Circuit held that confirmation was not res judicata, and that since no objection was filed to the secured claim, the creditor was entitled to rely upon its lien. The Fifth Circuit, reviewing its earlier decision in *Simmons*, used language arguably inconsistent with this Court's ruling today. It stated that "the key to *Simmons* is the requirement that a claim be objected to before the creditor loses its ability to rely upon its lien for relief ... the filing of an objection is all that *Simmons* requires. Once a debtor has objected to a claim, the creditor is on notice that full participation in the confirmation proceedings is required or its lien will be at risk." *Howard,* at 642.

The Court notes that the issue before the Fifth Circuit in both *Simmons* and *Howard* was whether a plan was sufficient to avoid a lien. The Fifth Circuit was not expressly ruling upon the sufficiency of some other mechanism.

> . . . .

This Court therefore believes that *Simmons* and *Howard* are best understood as standing for the proposition that at least a claim objection is required before a creditor's lien will be extinguished under Section 506.

*In re Kleibrink,* 346 B.R. at 747-49, 751, 752.

Judge Houser ultimately held that the creditor's lien survived the first bankruptcy case. Even though the debtor had filed objections to the creditor's proof of claim, the court found that the

multiple objections were so confusing that the creditor had not received sufficient notice to satisfy due process because the creditor was not clearly notified that the debtor was seeking to extinguish its lien.  Rather, the objection to the claim "'did not seek to 'disallow' [the creditor's] claim, but rather, it sought to allow the claim at a zero amount.'"[16]

In the case at bar, Rushmore's pre-petition mortgage arrearage claim of $439.21 was deemed allowed, and the Debtor paid the claim in full.  It was not until the Debtor had completed his plan payments that Rushmore filed its Third Proof of Claim claiming that the Debtor owed a much larger pre-petition mortgage arrearage.  The Debtor objected to Rushmore's Third Proof of Claim, and thereby complied with the minimum requirements of *Simmons* and *Howard* to extinguish a lien under § 506(d).  Further, unlike the confusing objections in *Kleibrink,* the Debtor's objection to Rushmore's Third Proof of Claim clearly stated that "the Debtor Objects to the Proof of Claim filed by [Rushmore] on May 23, 2014, and said claim should be disallowed."[17]

Unlike the debtor in *Kleibrink,* Rushmore was clearly put on notice that the Debtor was seeking to disallow its Third Proof of Claim for pre-petition mortgage arrearage.  And unlike the creditor in *Kleibrink,* Rushmore fully participated in the proceedings on the objection to its Third Proof of Claim process:  Rushmore received notice of the objections; filed responses; participated in hearings; and entered into a joint stipulation of facts with the Debtor.  After full participation by Rushmore, the Court then entered its Proof of Claim Opinion disallowing Rushmore's proof of claim for pre-petition mortgage arrearage and deeming the Debtor current in his mortgage payments.

The matter before the Court is a complaint to determine the validity, priority and extent of

---

[16]*In re Kleibrink,* 621 F.3d 370, 371 (5th Cir. 2010) (citation omitted).

[17]*Amended Objection to Proof of Claim*, Dkt. #55, unnumbered p. 3, July 29, 2014.

19

Rushmore's lien. Therefore, the Court finds that it need not answer the question raised in *Kleibrink* of whether the objection to Rushmore's Third Proof of Claim substituted for an adversary proceeding and satisfied the requirements of due process so that Rushmore's lien was extinguished. The issue of the validity, priority and extent of Rushmore's lien is squarely before the Court and all parties' due process rights have been protected. The Court will now determine whether its ruling which disallowed Rushmore's Third Proof of Claim extinguished Rushmore's lien for the pre-petition mortgage arrearage.

In a bankruptcy case, a proof of claim is evidence of the validity and amount of a creditor's claim. A party who objects to a proof of claim is objecting to the validity and/or amount of the creditor's claim. When Rushmore filed its original proofs of claim and then the Third Proof of Claim, its claims were essentially bifurcated: one part was for the ongoing mortgage payments and the other part was for mortgage arrearage. The Debtor did not object to Rushmore's claim regarding his ongoing mortgage payments. Instead, the Debtor only objected to Rushmore's claim for pre-petition mortgage arrearage contained in the Third Proof of Claim. In its Proof of Claim Opinion, the Court disallowed the pre-petition mortgage arrearage claim in Rushmore's Third Proof of Claim. The Court did not, however, disallow Rushmore's claim for the ongoing monthly mortgage payments.

As stated previously, under § 506(d), "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title."[18] In other words, if a party in interest requests that a court determine the allowability of a claim which the lien secures, the lien is void if the court

---

[18]11 U.S.C. § 506(d).

20

disallows the claim under § 502.  As recognized by the United States Supreme Court in *Dewsnup v. Timm,* 502 US 410, 417 (1992) ("Therefore, we hold that § 506(d) does not allow petitioner to 'strip down' respondents' lien, because respondents' claim is secured by a lien and has been *fully allowed* pursuant to § 502.") (emphasis added), the legislative history of § 506(d) supports this view:

> Subsection (d) permits liens to pass through the bankruptcy case unaffected, However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under Section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed.

H.R. Rep. No. 95–595, p. 357 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6313.

In its Proof of Claim Opinion, Rushmore's claim for pre-petition mortgage arrearage in the Third Proof of Claim was not disallow under either § 502(b)(5) or § 502(e).[19]  Consequently, when the Court disallowed Rushmore's claim for a pre-petition mortgage arrearage of $12,608.52 contained in the Third Proof of Claim, Rushmore's lien for a pre-petition mortgage arrearage of $12,608.52 became void pursuant to § 506(d).

Further, the *Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders* (Dkt. #15) (Confirmation Order) states on page one of the *Amended Chapter 13 Plan*: "SECURED CLAIMS:  Creditors that have filed claims that are not disallowed are to retain lien(s) under 11 U.S.C. § 1325(a)(5)(B)(i) until plan is completed. . . ."  Ignoring the fact that the Debtor had already completed his plan, once the Court disallowed  Rushmore's claim for pre-petition mortgage arrearage contained in the Third Proof of Claim, the Confirmation Order clearly states that Rushmore's lien was not retained under § 1325(a)(5)(B)(i).

The Court also finds persuasive the case of *In re McDonald*, 336 B.R. 380 (Bankr. N.D. Ill.

---

[19]Section 502(b)(5) applies to a domestic support obligation.  Section 502(e) applies to a claim for reimbursement or contribution.

21

2006).   In *McDonald*, the debtor proposed to pay his ongoing mortgage payment and cure the mortgage arrearage in his plan.   The debtor paid all post-petition mortgage payments and all pre-petition mortgage arrearage provided for in his plan.   The debtor then received his discharge. Subsequently, the bank attempted to foreclose on the debtor's property.   The court found that the confirmed plan "acts like a court-approved contract or consent decree that binds the debtor and all of the creditors."[20]   The court found that "[b]ecause the scheduled arrearage amount had been cured, the mortgage was thereby modified as permitted under 11 U.S.C. § 1322(b)(5) so far as to require mortgage reinstatement as of the discharge date and eliminate any right of the Bank to foreclose based on pre-bankruptcy arrearage."[21]   The court further held that the effect of a confirmed plan and a discharge "was to deaccellerate the default and [determine] that Debtor was current as of the date of discharge, and to reinstate the loan according to its terms as of that date.   The principal balance still due under the loan was not affected."[22]

Similarly, when the Court granted the *Trustee's Motion for an Order Declaring [Rushmore's] 1322(B)(5) Claim Defaults Cured Pursuant to Amended Proof of Claim Filed January 11, 2011* (Dkt. #70)  the Debtor was deemed current as to all mortgage payments as of that date and all defaults were cured.   Consequently, like the debtor in *McDonald,* the Debtor's mortgage loan should have been reinstated as of that date.

The Court thereby finds that when the Court disallowed Rushmore's Third Proof of Claim for a pre-petition mortgage arrearage of $12,608.52, Rushmore's lien for this pre-petition arrearage

---

[20]*In re McDonald*, 336 B.R. at 383 (citations omitted).

[21]*Id.* at 385.

[22]*Id.* at 386.

became void pursuant to § 506(d).  At the time the Debtor received his discharge, the Debtor was deemed fully current on his mortgage.  Assuming the Debtor has otherwise paid the indebtedness in full, the Debtor is entitle to have the lien on his property released.

## CONCLUSION

The first step in determining whether a motion for summary judgment should be granted or denied is for the court to determine whether a dispute exists as to "a genuine issue of material fact as to each element of the cause of action."[23]  Since the parties have stipulated as to the facts, there is no dispute as to any material facts.  The Court then must determine whether summary judgment should be granted to the Debtor or to Rushmore.

In order to receive distributions under a confirmed Chapter 13 plan, a creditor must file a proof of claim.  Without objection by a party, the proof of claim is deemed allowed and "shall constitute prima facie evidence of the validity and amount of the claim."  Fed. R. Bank. P. 3001(f).  Rushmore filed two proofs of claim stating that it was owed $439.21 for a pre-petition mortgage arrearage.  Since no objection was filed to either proof of claim, the claims were deemed allowed.  The Debtor paid the $439.21 in pre-petition mortgage arrearage in full.

Rushmore then filed its Third Proof of Claim for a pre-petition mortgage arrearage in the amount of $12,608.52, and the Debtor objected to this claim.  In its Proof of Claim Opinion, the Court found that allowing Rushmore to amend its proof of claim, in such a large dollar amount, after the Debtor had completed all of his plan payments would be unfairly prejudicial to the Debtor.  The Debtor paid Rushmore's claim exactly as Rushmore requested.  The fact that Rushmore waited until the Debtor had completed his plan payments to claim that it was owed an additional $12,608.52 was

---

[23] *Malacara v. Garber,* 353 F.3d 393, 404 (5th Cir. 2003).

23

sufficient for the Court to deny Rushmore relief. "The fault for [this] problem lies squarely with [Rushmore]"[24] and not with the Debtor.

Since the Debtor objected to Rushmore's Third Proof of Claim and requested that the claim be disallowed, the Debtor met the minimum requirements for voiding Rushmore's lien. The Complaint currently before the Court "complies with the procedural safeguards set forth in Part VII of the Federal Rules of Bankruptcy Procedure"[25] in order to void a lien under § 506(d). When the Court disallowed Rushmore's claim for pre-petition mortgage arrearage in the Third Proof of Claim, Rushmore's lien became void pursuant to § 506(d). Consequently, the Court finds that Rushmore does not have a valid lien for the $12,608.52 the Court disallowed as pre-petition mortgage arrearage and that judgment should be granted as a matter of law in favor of the Debtor.

To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined that they would not alter the result.

A separate judgment consistent with this Opinion will be entered in accordance with Rule 7054 and Rule 9021of the Federal Rules of Bankruptcy Procedure.

**##END OF OPINION##**

---

[24]*In re Taylor,* 280 B.R. 711, 716 (Bankr. S.D. Ala. 2001).

[25]*In re Kleibrink,* 346 B.R. at 749.